IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EDDIE J. HENDERSON, III,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN KENNETH BLACK,<br><br>Respondent. | CASE NO. 1:21-cv-1412<br><br>DISTRICT JUDGE<br>DAVID A. RUIZ<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT &<br>RECOMMENDATION** |

Eddie J. Henderson, III, filed a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. Doc. 1. Henderson is currently in custody at the Richland Correctional Institution serving a sentence of six years' imprisonment imposed by the Cuyahoga County Court of Common Pleas in *State v. Henderson*, Case No. 18-27845-A. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court dismiss Henderson's petition.

## Summary of underlying facts

In habeas corpus proceedings brought under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). "This presumption also applies to the factual findings that [a] state appellate court makes on its review of the state trial record." *Johnson v. Bell*,

525 F.3d 466, 474 (6th Cir. 2008). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Id*.

The Ohio Court of Appeals for the Eighth Appellate District summarized the facts underlying Henderson's conviction as follows:

> {¶2} The events underlying this case took place on April 12, 2018. That morning, victim Lorenzo Kane ("Kane") had an appointment to get a haircut with his barber, Henderson, at the Clips of Excellence barber shop in Cleveland Heights, Ohio. Kane had been a regular customer of Henderson's for several months. Kane arrived early to his appointment. Initially, Kane waited in his car, which was parked in the parking lot behind the shop. At one point, Kane decided to wait inside the shop.
>
> {¶3} While he waited, Kane was singing to himself. Eventually, Henderson arrived through the shop's back door. Kane asked Henderson why he was late. According to Kane, he was upset but relatively calm. According to Henderson and another barber, Kane was almost immediately aggressive with Henderson and threatened him physically. Henderson decided to remove himself from the situation, telling Kane that one of the other barbers could cut his hair. Henderson went outside and opened the front passenger door of his car. Kane followed Henderson outside. According to Kane, Henderson yelled at him, continuing their disagreement, so he walked over to Henderson's car. According to Henderson, Kane followed him, got too close to him, and did not back off enough when Henderson asked him to do so. As a result of that, according to Henderson, he shot Kane. The first shot struck Kane's leg, causing him to collapse to the ground between two other parked vehicles. The next shot hit Kane in his torso. Kane brought his right hand up to protect his face, and the third shot went through his hand and grazed his jaw.

2

{¶4} Henderson immediately went back inside the shop, told another barber to call 911, and set his gun down on a table between two barber stations. Officers arrived, transported Kane to the hospital to be treated, and arrested Henderson, who immediately identified himself as the shooter and stated that he fired his gun in self-defense.

{¶5} Henderson was charged with one count of attempted murder in violation of R.C. 2923.02 and 2903.02(A), one count of felonious assault in violation of R.C. 2903.11(A)(1), and one count of felonious assault in violation of R.C. 2903.11(A)(2). Each of the three counts carried one- and three-year firearm specifications.

{¶6} A jury trial began on November 7, 2018. The state called Kane, another barber, another customer, and several law enforcement officers as witnesses. The state also introduced surveillance footage showing the first part of the shooting. Following the state's case, Henderson made a Crim.R. 29 motion, that the court denied. Henderson then called a different barber, and Henderson testified on his own behalf. At the close of his case, Henderson renewed his Crim.R. 29 motion, which the court again denied.

{¶7} On November 15, 2018, the jury returned a verdict of not guilty as to attempted murder, not guilty as to felonious assault alleging serious physical harm, and guilty as to felonious assault by way of a deadly weapon.

{¶8} On December 17, 2018, the court sentenced Henderson to three years on the felonious assault charge, to be served consecutively to three years for the firearm specification, for an aggregate term of six years.

*State v. Henderson*, 2019-Ohio-4581, 2019 WL 5853412, at *1–2 (Ohio Ct. App. 2019).

**Procedural background**

*Trial court proceedings*

In 2018, a Cuyahoga County grand jury issued a three-count indictment charging Henderson with Attempted Murder, in violation of Ohio Revised Code §§ 2903.02(A) and 2923.02; Felonious Assault, in violation of Ohio Revised Code § 2903.11(A)(1)); and Felonious Assault, in violation of Ohio Revised Code § 2903.11(A)(2). Doc. 6-1, at 1–3. All three counts contained one- and three-year firearm specifications and a forfeiture specification. *Id*. at 1–3. As noted, after Henderson pleaded not guilty, a jury convicted him of felonious assault with a deadly weapon and the trial court imposed an aggregate term of six years' confinement. *Id*. at 4–6.

*Direct appeal*

Henderson filed a timely notice of appeal with the Ohio court of appeals. Doc. 6-1, at 8. In his supporting brief, Henderson raised a single assignment of error, that "[t]he jury's verdict of guilt was against the manifest weight of the evidence." *Id*. at 14. Relevant to his current petition, Henderson noted that since his conviction, the law in Ohio regarding self-defense had changed. *Id*. at 20–22. He explained that at trial, he had the burden to prove by a preponderance of the evidence that he acted in self-defense. *Id*. at 20. In the interim, however, the Ohio legislature amended the Ohio Revised Code to place the burden on the prosecution to prove beyond a reasonable doubt that a defendant did not act in self-defense. *Id*. at 20–21; *see* Ohio Revised Code §

4

2901.05(B)(1), effective March 28, 2019; *State v. Messenger*, 216 N.E.3d 653, 657 (Ohio 2022). The court of appeals affirmed Henderson's conviction in November 2019. *Henderson*, 2019 WL 5853412.

In December 2019, Henderson filed a notice of appeal with the Ohio Supreme Court. Doc. 6-1, at 48. In January 2020, he filed a "notice for delayed appeal." *Id.* at 58. The Ohio Supreme Court construed the latter notice as a motion to file a delayed appeal and, so construed, granted it. *Id.* at 61.

In his memorandum in support of jurisdiction, Henderson did not present any specific propositions of law. Among other things, he complained of unequal treatment, racism, and corruption in the trial court. Doc. 6-1, at 66–70. Relevant to his current petition, he argued that the version of Ohio's self-defense statute in effect at the time of his trial violated the Sixth Amendment and was thus void. *Id.* at 67; *see id.* at 71–72.

On July 7, 2020, the Ohio Supreme Court declined under rule 7.08(B)(4) of its rules of practice to accept jurisdiction. *Id.* at 80. Henderson did not seek review in the United States Supreme Court.

*Application to reopen*

Meanwhile, in February 2020, Henderson filed in the Ohio court of appeals an application under Ohio Appellate Rule 26(B) to reopen his direct appeal.[1] Doc. 6-1, at 81–87. The Ohio court of appeals denied Henderson's

---

[1] Rule 26(B)(1) provides:

> A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and

5

application in April 2020. *State v. Henderson*, 2020-Ohio-1377, 2020 WL 1814138 (Ohio Ct. App. 2020). It does not appear that Henderson appealed to the Ohio Supreme Court.[2]

*Federal habeas proceedings*

Henderson filed a timely petition for writ of habeas corpus in early July 2021. Doc. 1, at 15; *see Houston v. Lack*, 487 U.S. 266, 270 (1988) (holding that an imprisoned petitioner's petition is deemed filed when he places it in his prison's mailing system). He raises the following grounds for relief:

> *Ground one*: The jury's verdict of guilt was against the manifest weight of the evidence.
>
> *Ground two*: Whether the jury's verdict of guilty was against the manifest weight of the evidence.
>
> *Ground three*: Ineffective assistance of appellate counsel.

---

sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

[2] There is some ambiguity in the Ohio Supreme Court's docket. The entry for July 7, 2020, which reflects that the court declined to accept jurisdiction, indicates that the court's order relates to "2020-Ohio-1377." *See State v. Henderson*, 159 Ohio St. 3d 1435, 2020-Ohio-3634 (Ohio 2020); *see* https://www.supremecourt.ohio.gov/rod/docs/pdf/0/2020/2020-ohio-3634.pdf. But the decision found at that citation is the court of appeals' decision denying Henderson's application to reopen. Review of the Ohio Supreme Court's docket page for Henderson's appeal, however, shows that his appeal pertains to the court of appeals' decision as to Henderson's direct appeal. *See* https://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2020/0166.

6

Doc. 1, at 5–9. The Warden filed a return, Doc. 6, and Henderson filed a traverse, Doc. 7.

## Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, § 104, 110 Stat. 1214, habeas petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when "state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review." *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Robinson v. Horton*, 950 F.3d 337, 343 (6th Cir. 2020). To

7

exhaust his remedies, a state defendant with federal constitutional claims must "fairly presen[t]" those claims to the state courts before raising them in a federal habeas corpus action. *Robinson*, 950 F.3d at 343 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Caver v. Straub,* 349 F.3d 340, 345 (6th Cir. 2003). And a habeas petitioner must "present[] both the factual and legal basis for [the] claims to the state courts." *Hanna v. Ishee*, 694 F.3d 596, 606 (6th Cir. 2012). This means that the "'petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law.'" *Williams*, 460 F.3d at 806 (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). "'[G]eneral allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were violated.'" *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017) (quoting *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a

8

petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see Woolbright v. Crews*, 791 F.3d 628, 631 (6th Cir. 2015) ("When a petitioner has failed to fairly present … claims to the state courts and no state remedy remains, [the] claims are considered to be procedurally defaulted.") (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)). While the exhaustion requirement is technically satisfied in this circumstance because state remedies are no longer available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), a petitioner's failure to have the federal

9

claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show "cause for the default and actual prejudice as a result of the alleged violation of federal law," or show that a "fundamental miscarriage of justice" will result if the petitioner's claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that the state court's adjudication "was contrary to," or "involved an unreasonable application of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the

10

[United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law'" refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at 231 (quoting 28 U.S.C. § 2254(d)(1) and *Woodall*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "*awareness*" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *see Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably

11

applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

*1.    Ground one fails on the merits*

Henderson says that his first ground for relief is that "[t]he jury's verdict of guilt was against the manifest weight of the evidence." Doc. 1, at 5. But he is unrepresented and is entitled to have his petition liberally construed. *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). And review of information Henderson provides as *supporting facts*, reveals that his first ground concerns the fact that, at the time of his trial, he was required to prove that he acted in self-defense. Doc. 1, at 5. He amplifies this argument in a memorandum filed

12

with his petition, in which he argues that he "was not under any [c]onstitutional obligation then or now to prove his own guilt or innocence beyond a reasonable doubt." Doc. 1-4, at 3. Henderson opines that Ohio's legislature later "repealed" Ohio's self-defense statute because it was unconstitutional and asserts that it was error that the amended statute was not applied to him. *Id*. at 3–4.

Assuming that Henderson preserved this issue below,[3] *see* Doc. 6-1, at 20–22, 67, 71–72, the claim fails on the merits. Ohio's former self-defense statute was constitutional. *Martin v. Ohio*, 480 U.S. 228, 236 (1987); *see Patterson v. New York*, 432 U.S. 197, 206 (1977) ("once the facts constituting a crime are established beyond a reasonable doubt, … the State may refuse to sustain the affirmative defense of insanity unless demonstrated by a preponderance of the evidence"); *see also Warmus v. LaRose*, No. 17-3196, 2017 WL 7796291, at *3 (6th Cir. Sept. 28, 2017) (order). Without regard to why Ohio's legislature amended the statute, Henderson points to nothing—and the Court is aware of nothing—that would have required Ohio to apply its amended statute to him after he was convicted. Indeed, in his appeal to the Ohio court of appeals, Henderson's counsel conceded that "Henderson [was] not ask[ing] th[at] court to ignore the law as it existed when [Henderson's] case was tried." Doc. 6-1, at 21. So Henderson's first ground fails on the merits.

---

[3] "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003).

13

*2. Ground two is procedurally defaulted*

In his second ground, Henderson argues that his verdict was against the manifest weight of the evidence. Doc. 1, at 7. The Warden argues that manifest weight claims are not cognizable in habeas. Doc. 6, at 6–9.

To an extent, the Warden has a point. Manifest-weight-of-the-evidence claims are state-law issues that are not cognizable in federal habeas proceedings.[4] *See Johnson v. Havener*, 534 F.2d 1232, 1234 (6th Cir. 1976). But that's not the end of the story. The Sixth Circuit has held that a manifest-weight-of-the-evidence claim presented on direct review to an Ohio court of appeals can suffice to preserve an insufficient-evidence argument. *Nash v. Eberlin*, 258 F. App'x. 761, 765 (6th Cir. 2007). So cognizability is not the issue.

Instead, the problem for Henderson is that he did not raise a sufficiency or manifest-weight claim to Ohio's Supreme Court. *See* Doc. 6-1, at 64–72. And if a habeas petitioner "fail[s] to fairly present federal claims to the state courts, and a state procedural rule now prohibits the state court from considering

---

[4] A manifest-weight-of-the-evidence claim presents an issue of state law. Under Ohio law, "[w]eight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'… When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Thompson*, 678 N.E.2d 541, 546–47 (Ohio 1997) (citations omitted). But a federal habeas court can't "reweigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court" because, in habeas proceedings, "[i]t is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citations omitted).

14

them, the claims are considered procedurally defaulted." *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009); *see O'Sullivan*, 526 U.S. at 845–48; *Caver*, 349 F.3d at 345. Although a petitioner in that situation might have "technically satisfied" "the exhaustion requirement[,] … the petitioner's failure to have the federal claims considered in the state courts results in a procedural default of those claims that bars federal court review." *Pudelski*, 576 F.3d at 605; *see Seymour v. Walker*, 224 F.3d 542, 549–50 (6th Cir. 2000) ("When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review.").

"In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal." *Williams*, 460 F.3d at 806; *see Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 830 (6th Cir. 2019) (explaining that Ohio courts enforce res judicata). As a result, "if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised on direct appeal, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806; *see Hicks v. Collins*, 384 F.3d 204, 211 (6th Cir. 2004).

Here, Henderson could have raised a manifest-weight claim to Ohio's Supreme Court; indeed, he presented the issue to the Ohio court of appeals. Because he could have but did not raise the issue before Ohio's Supreme Court, Ohio's res judicata rule would bar Henderson from raising the argument now. *See Gerth*, 938 F.3d at 830. As a result, this claim is procedurally defaulted. *Williams*, 460 F.3d at 806.

Henderson could avoid this default by showing "cause for the default and actual prejudice as a result of the alleged violation of federal law," or showing that a "fundamental miscarriage of justice" will result if his claims are not considered. *Coleman*, 501 U.S. at 750. But Henderson says nothing about cause or prejudice. So there is no need to discuss cause and prejudice. *See Awkal v. Mitchell*, 613 F.3d 629, 646 (6th Cir. 2010).

Arguably, Henderson claims that a "fundamental miscarriage of justice" will result if his claims are not considered. Henderson seems to argue that his conviction was against the manifest weight of the evidence because his jury rendered inconsistent verdicts. *See* Doc. 1, at 7; Doc. 1-4, at 4 (arguing that his conviction on one count was inconsistent with his acquittal two other counts "because the evidence supporting all three counts w[as] identical"). Allegedly inconsistent verdicts do not, standing alone, support a manifest-weight argument, however. *See State v. Taylor*, 2008-Ohio-1626, 2008 WL 885822, at *1–2 (Ohio Ct. App. 2008); *see also State v. Gardner*, 889 N.E.2d 995, 1013–14 (Ohio 2008); *State v. Adams*, 374 N.E.2d 137, 140 (Ohio 1978), *vacated in part*

16

*on other grounds*, 439 U.S. 811 (1978).[5] Nor are inconsistent verdicts evidence of a constitutional violation. *See United States v. Powell*, 469 U.S. 57, 65 (1984); *United States v. Lawrence*, 555 F.3d 254, 261–62 (6th Cir. 2009). So Henderson's allegedly inconsistent verdicts are not evidence of a "fundamental miscarriage of justice."

### 3. Ground three is procedurally defaulted

In his third ground, Henderson argues that his appellate counsel was ineffective for not arguing that Ohio's amended self-defense law should have been applied to Henderson. Doc. 1, at 9. In a memorandum attached to his petition, Henderson asserts that his appellate counsel was also ineffective for not raising ineffectiveness of his trial counsel for not raising a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986) during jury selection. Doc. 1-4, at 2–3. Henderson raised these arguments in his application to reopen under Ohio Appellate Rule 26(B). *See* Doc. 6-1, at 81–86; *see also Hoffner v. Bradshaw*, 622 F.3d 487, 504 (6th Cir. 2010) ("Under Ohio law, a claim of ineffective assistance of appellate counsel must be raised as part of an Ohio Appellate Rule 26(B)

---

[5]  In *Adams*, the Ohio Supreme Court explained that:

> [t]he several counts of an indictment containing more than one count are not interdependent. A verdict responding to a designated count will be construed in the light of the count designated, and no other. An inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count.

374 N.E.2d at 140 (citation omitted).

17

motion to reopen an appeal before the Ohio Court of Appeals."). But the Ohio court of appeals rejected Henderson's application as untimely. *See id.* at 105–06.

When faced with this situation, the Sixth Circuit has held that because "'the time constraints of Rule 26(B) were firmly established and regularly followed,'" a habeas petitioner whose Rule 26(B) application was rejected as untimely had "procedurally defaulted his claims of ineffective assistance of appellate counsel." *Hoffner*, 622 F.3d at 505 (quoting *Parker v. Bagley*, 543 F.3d 859, 861 (6th Cir. 2008)); *see Landrum v. Mitchell*, 625 F.3d 905, 917 (6th Cir. 2010) ("because Landrum's Rule 26(B) motion was filed beyond the ninety-day period, we conclude that he has procedurally defaulted his ineffective assistance of appellate counsel claim"). Henderson offers no reason that the same result should not follow here. Indeed, he doesn't mention the fact that his application was denied as untimely.

Moreover, Henderson failed to appeal to the Ohio Supreme Court after the court of appeals denied his application. So, even putting aside the basis for the court of appeals' denial of Henderson's application, he has procedurally defaulted the ineffective assistance claims he now seeks to raise. *See Williams*, 460 F.3d at 806; *English v. Banks*, No. 1:11-cv-675, 2012 WL 3070742, at *15 (S.D. Ohio July 30, 2012) ("Failure to present an issue to the state supreme court on discretionary review constitutes procedural default") (citing *O'Sullivan*, 526 U.S. at 848).

As mentioned, Henderson could avoid this result by showing "cause for the default and actual prejudice as a result of the alleged violation of federal law," or showing that a "fundamental miscarriage of justice" will result if his claims are not considered. *Coleman*, 501 U.S. at 750. Because Henderson says nothing about cause or prejudice, there is no need to discuss cause and prejudice. *See Awkal*, 613 F.3d at 646. And he has provided no basis to determine that a "fundamental miscarriage of justice" will result if his ineffective-assistance claims are not considered. So Henderson's ineffective-assistance claims are procedurally defaulted.

Henderson also seeks to assert that his counsel was ineffective for not challenging the validity of his criminal complaint because, according to Henderson, the complaint did not comply with Rule 3 of the Ohio Rules of Criminal Procedure. Doc. 1-4, at 3. Putting aside the fact that Henderson did not preserve this argument, he was tried based on an indictment, not a complaint. *See* Doc. 6-1, at 1–3. And indictments are governed by Rule 7 of the Ohio Rules of Criminal Procedure. So this argument is factually baseless.

Henderson additionally seeks to argue that his appellate counsel was ineffective for not arguing that Ohio's self-defense statute was unconstitutional. Doc. 1-4, at 2–3. But even if he had preserved this argument, which he did not, the argument is foreclosed by binding precedent. *See Martin*, 480 U.S. at 236. So counsel could not have been ineffective for not raising it.

19

*See Kelly v. Lazaroff*, 846 F.3d 819, 831 (6th Cir. 2017) ("counsel cannot be considered ineffective for failing to raise a meritless claim").

## Conclusion

For all the reasons set forth above, I recommend that Henderson's petition be dismissed.

Dated: March 14, 2024

/s/ James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–531 (6th Cir. 2019).